William T. Josem, Esquire
CLEARY, JOSEM & TRIGIANI LLP
325 Chestnut Street, Suite 200
Philadelphia, PA 19106
Telephone: 215-735-9099

*Attorneys for Defendant,*
*UAW Local 259 Pension Fund*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MANHATTAN FORD LINCOLN, INC., | : |
| Plaintiff, | : **CIVIL ACTION No. 17-CV-5076** |
| v. | : |
| UAW LOCAL 259 PENSION FUND, | : |
| Defendant | : |

### UAW LOCAL 259 PENSION FUND'S LOCAL CIVIL RULE 56.1 RESPONSE TO MANHATTAN FORD'S STATEMENT OF MATERIAL FACTS

UAW Local 259 Pension Fund ("Fund") submits the following response to Manhattan Ford Lincoln's ("Manhattan Ford") Local Rule 56.1 Statement of Material Facts in support of Manhattan Ford's Motion for Summary Judgment.

1.  At the time of Manhattan Auto's withdrawal from the UAW Local 259 Pension Fund ("the Fund"), Diane Gleave of The Segal Company ("Segal") was the Fund's principal actuary. See ECF 6, Compl. Exh. C ("Final Award") at 6.

    **RESPONSE**: The Fund does not controvert this statement.

2. Gleave's best estimate was that the Fund's assets would return 7.5% per year, on average, over the long term. Final Award at 7.

>**RESPONSE**: The Fund controverts this statement. Diane Gleave, the Fund's actuary, used a 7.5% investment return assumption as her best estimate for minimum funding purposes as to how the Fund's assets would perform over the long term. Roth Decl., Ex. A ("Tr."), at 112. The facts alleged in paragraph 2 are not material.

3. Gleave derived that 7.5% estimate by analyzing the Fund's investments and asset classes, and the likely return for each class. Final Award at 7.

>**RESPONSE**: The Fund controverts this statement. Ms. Gleave arrived at the 7.5% investment return assumption for minimum funding purposes using the "building block" method, which "takes into account the Fund's actual assets and actual targeted asset allocation." Tr. 80:25 – 84:17. The facts alleged in paragraph 3 are not material.

4. Based on the 7.5% estimate, the Fund was fully funded at the time of Manhattan Auto's withdrawal. Final Award at 7.

>**RESPONSE**: The Fund controverts this statement. Ms. Gleave testified that based on the 7.5% estimate used by the Plan for long-term minimum funding purposes, the Plan was fully funded at the time of Manhattan Auto's withdrawal. Tr. 112. The facts alleged in paragraph 4 are not material.

5. Gleave used the 7.5% estimate to calculate the present value of the Fund's liabilities for purposes of ERISA's minimum funding rules. Final Award at 7.

**RESPONSE**: The Fund does not controvert this statement. The facts alleged in paragraph 5 are not material.

6. Gleave did not use the 7.5% estimate to calculate the present value of the Fund's liabilities for purposes of calculating Manhattan Auto's withdrawal liability. Final Award at 8.

**RESPONSE**: The Fund controverts this statement. Ms. Gleave used the 7.5% investment return assumption as a component of the Segal Blend which Ms. Gleave used in calculating Manhattan Ford's withdrawal liability. Final Award at 8, paragraph 12.

7. To calculate Manhattan Auto's withdrawal liability, Gleave calculated the present value of some of the Fund's liabilities using the 7.5% investment-return estimate and some using lower rates published by the PBGC-an approach known as the "Segal Blend." Final Award at 8.

**RESPONSE**: The Fund does not controvert this statement.

8. PBGC rates are effectively risk-free rates of return. Final Award at 8.

**RESPONSE**: The Fund does not controvert this statement.

9. At the time of Manhattan Auto's withdrawal, the PBGC rates were in the 3% range. Roth Decl. Exh. A, Hearing Transcript ("Tr.") at 93.

**RESPONSE**: The Fund does not controvert this statement.

10. Gleave used the Segal Blend exclusively to compute withdrawal liability and for no other purpose. Final Award at 8.

**RESPONSE**: The Fund does not controvert this statement. The facts alleged in paragraph 10 are not material.

11. Use of the Segal Blend increased the withdrawal liability assessed against Manhattan Auto from zero to about $2.55 million. Final Award at 7-8.

    **RESPONSE**: The Fund controverts this statement. Ms. Gleave's use of the Segal Blend resulted in a withdrawal liability assessment of $2.55 million. Final Award at 8. The facts alleged in paragraph 11 are not material.

12. Gleave did not employ any other erroneous actuarial assumptions that offset this impact of the use of the Segal Blend. Tr. at 54-55.

    **RESPONSE**: The Fund controverts this statement. Ms. Gleave did not employ any erroneous actuarial assumptions. This statement in paragraph 12 is a legal conclusion. Any facts alleged in paragraph 12 are not material.

Respectfully submitted,

CLEARY, JOSEM & TRIGIANI LLP

By:    /s/ William T. Josem
    William T. Josem, Esquire
    Email: wtjosem@cjtlaw.org
    325 Chestnut Street, Suite 200
    Philadelphia, PA 19106
    Telephone: 215-735-9099

    *Attorneys for Defendant,*
    *UAW Local 259 Pension Fund*

Dated: November 20, 2017