CLEARY, JOSEM & TRIGIANI LLP
325 Chestnut Street, Suite 200
Philadelphia, PA 19106
Telephone: 215-735-9099

*Attorneys for Defendant,*
*UAW Local 259 Pension Fund*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MANHATTAN FORD LINCOLN, INC., | : |
| Plaintiff, | : **CIVIL ACTION No. 17-CV-5076** |
| v. | : |
| UAW LOCAL 259 PENSION FUND, | : |
| Defendant | : |

**UAW LOCAL 259 PENSION FUND'S**
**LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, UAW Local 259 Pension Fund ("Plan") submits this statement of undisputed material facts in support of its cross-motion for summary judgment.

1. Manhattan Ford Lincoln, Inc. ("Manhattan Ford") was a contributing employer to the Plan whose contribution obligation to the Plan ceased in 2014, resulting in a complete withdrawal from the Plan. ECF 6, Compl. Exh. C ("Final Award") at 5.

2. As a result of its complete withdrawal, Manhattan Ford was assessed withdrawal liability of $2,553,692, payable in quarterly installments of $99,640.50 over 8 years, with a final payment of $78,662.04. Final Award at 6.

3.  In calculating the withdrawal liability of Manhattan Ford, Ms. Diane Gleave, the Plan Actuary from The Segal Company, used the "Segal Blend," which uses both market interest rates published by the PBGC and a plan's minimum funding investment return interest rate, in this case 7.5%, to calculate the Fund's unfunded vested benefits for withdrawal liability purposes. Final Award at 8.

4.  For the Fund, Ms. Gleave used a minimum funding investment return assumption of 7.5% for all purposes other than withdrawal liability. Final Award at 8.

5.  The Segal Company consults to more multiemployer plans than any firm in the country, with over 400 such plans as clients.  Josem Decl. Ex. 2 ("Levy Report") at para. 3.

6.  The Segal Blend was developed shortly after the passage of the Multiemployer Pension Plan Amendments Act in 1980 and has essentially remained unchanged since that time. Final Award at 8.

7.  Ms. Gleave has used the Segal Blend to calculate withdrawal liability for the Plan for more than twenty-five (25) years.  Final Award at 6.

8.  During her career, Ms. Gleave has served as the enrolled actuary for more than 50 multiemployer plans.  Tr. 77.

9.  When first adopted, application of the Segal Blend typically meant that an employer's withdrawal liability was less than it would have been had only the assumptions used for minimum funding purposes under ERISA been used to calculate that withdrawal liability. Final Award at 8.

10.  The Segal Blend values vested benefit liabilities based on: 1) PBGC, or risk-free rates, to the extent that there are assets on hand that are attributable to the withdrawing employer; and 2) long-term funding assumptions used for minimum funding purposes to the extent such

2

assets are not on hand.  Final Award at 8; ECF 6, Compl. Exh. A ("Assessment"), at 2; Tr. 136-37.

11.     As a profession, actuaries are obligated to follow Actuarial Standards of Practice (ASOPs) which are established by the Actuarial Standards Board.  Tr. 34.

12.     In calculating unfunded vested benefits for withdrawal liability purposes, some actuaries use only the discount rate used for minimum funding purposes, while others use only PBGC, or risk-free rates, and even others use some blend of rates.  Final Award at 15; Tr. 71-72.

13.     Once assessed, and absent a mass withdrawal, an employer's withdrawal liability is fixed and does not vary regardless of the experience of the pension plan.  Tr. 67.

Respectfully submitted,

CLEARY, JOSEM & TRIGIANI LLP


By:     /s/ William T. Josem
William T. Josem, Esquire
Email: wtjosem@cjtlaw.org
325 Chestnut Street, Suite 200
Philadelphia, PA 19106
Telephone:  215-735-9099

*Attorneys for Defendant,*
*UAW Local 259 Pension Fund*

Dated: November 20, 2017

3